UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
04 JAN 30 PM 3:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| HUNTSVILLE DODGE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. CV-03-S-2895-NE |
| ) | |
| AUTOBUILDERS SOUTH FLORIDA, ) | |
| INC., ) | ENTERED |
| ) | |
| Defendant. ) | JAN 3 0 2004 |

**MEMORANDUM OPINION**

This action is before the court on the following motions: (1) plaintiff's motion to remand;[1] (2) defendant's motion to stay discovery, to dissolve the temporary restraining order entered in state court, and to compel plaintiff to submit its claim to arbitration;[2] and (3) defendant's renewed motion to compel arbitration and to stay discovery.[3]

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff entered into a contract with defendant on March 2, 1999, for the construction of a building in Huntsville, Alabama, to house plaintiff's automotive dealership.[4] The contract contained an arbitration clause which provided, in pertinent part, that:

> Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration

---

[1] Doc. no. 10.
[2] Doc. no. 6.
[3] Doc. no. 15.
[4] *See* doc. no. 6 (motion to compel arbitration) at Exhibit 1 (Affidavit of Robert W. Rawe, II), and Exhibit A attached thereto (Standard Form of Agreement Between Owner and Contractor).

>Association, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof. . . .[5]

A dispute arose between the parties regarding payments due under the contract, and defendant filed a demand for arbitration with the American Arbitration Association on July 31, 2003.[6] The dollar amount of the claim defendant submitted to arbitration was stated to be $126,349.28.[7]

The arbitration proceedings progressed until October 14, 2003, when plaintiff filed a petition for a temporary restraining order in the Circuit Court of Madison County, Alabama, to prevent defendant from continuing the arbitration proceedings.[8] The state court granted plaintiff's petition, and entered an *ex parte* order on October 15, 2003, enjoining defendant from participating in the arbitral forum for a period of ten days.[9] Defendant removed the action to this court on October 24, 2003, asserting federal jurisdiction on the basis of the parties' complete diversity of citizenship, and satisfaction of the requisite amount in controversy.[10]

## II. MOTION TO REMAND

Plaintiff argues that this action should be remanded to the Circuit Court of Madison County, Alabama, because the requirements of diversity jurisdiction have not been satisfied.

---

[5]General Conditions of the Contract for Construction, appended to and incorporated within Standard Form of Agreement Between Owner and Contractor, at § 4.5.1.
[6]Motion to compel arbitration, at Exhibit 2.
[7]*Id.*
[8]*See* doc. no. 2.
[9]Doc. no. 4.
[10]Doc. no. 1.

It is undisputed that the parties are citizens of different states. Plaintiff only argues that the requisite amount in controversy has not been established.

> **(a)** The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between —
>
> (1) citizens of different States . . . .

28 U.S.C. § 1332(a)(1). The parties agree that the amount in controversy must be considered from plaintiff's perspective, because the removal was based on plaintiff's state court petition for injunctive relief, and plaintiff did not demand any damages, either in its petition, or in the complaint it later filed.[11]

In *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Electronics, Inc.*, 120 F.3d 216 (11th Cir. 1997), the Eleventh Circuit adopted the "plaintiff-viewpoint" rule, requiring courts to "measure the value of the object of the litigation solely from the plaintiff's perspective" when determining the amount in controversy for cases involving injunctive relief. *Id.* at 218-20. Under the "plaintiff-viewpoint" rule, courts may not consider the value, or cost, of the litigation to the defendant. *Id.*

The issue upon which plaintiff's motion to remand turns is whether, under the "plaintiff-viewpoint rule," the amount of defendant's arbitration demand can be considered in determining the amount in controversy. The Eleventh Circuit has not ruled squarely on the issue.

---

[11]No complaint was originally filed in state court along with plaintiff's petition for a temporary restraining order. This court allowed the case to be removed based on plaintiff's petition, but ordered plaintiff to file a complaint. Doc. no. 7. Plaintiff complied on November 17, 2003. Doc. no. 12.

Plaintiff argues that the *Ericsson* decision precludes the court from considering defendant's underlying arbitration demand, because the injunction entered in state court has "no measurable value" to plaintiff.[12]

The plaintiff in *Ericsson* was the losing bidder on a contract with the City of Birmingham. 120 F.3d at 217. Ericsson filed suit under the Alabama Competitive Bid Law[13] to enjoin performance of the contract between the city and the winning bidder, because it believed the contract was illegally formed. *Id.* The Eleventh Circuit noted that Ericsson's sole remedy under the Alabama statute was an injunction voiding the city's contract with the winning bidder. *Id.* at 221. Ericsson could not force the city to "rebid" the contract, and even if it could, the city would not be required to award the contract to Ericsson. *Id.* Thus, there was no way to reduce the benefit of the injunctive relief Ericsson sought "'to a monetary standard.'" *Id.* at 222 (quoting *Texas Acorn v. Texas Area 5 Health Systems Agency, Inc.*, 559 F.2d 1019, 1023-24 (5th Cir. 1977)).[14] The Eleventh Circuit accordingly held that any benefit Ericsson might receive from an injunction was "too speculative and immeasurable to satisfy the amount in controversy requirement." *Id.* at 221-22.

Plaintiff also relies on two other decisions of this court, both authored by Judge William M. Acker, Jr. *See Bronson & Migliaccio, LLP v. Kinsey,* 228 F. Supp. 2d 1315 (N.D. Ala. 2002); *Fidelity Warranty Services, Inc. v. Kidd,* 45 F. Supp. 2d 1284 (N.D. Ala.),

---

[12]Doc. no. 9 (memorandum of law in support of plaintiff's motion to remand), at ¶ 14.

[13]Ala. Code § 41-16-50, *et seq.* (1975).

[14]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

*aff'd,* 196 F.3d 1262 (11th Cir. 1999). Neither case applies to this controversy.

In *Kinsey,* the parties were engaged in an ongoing state court lawsuit, and the relief sought in the plaintiffs' federal complaint was an order compelling defendants to arbitrate the dispute in the underlying, state-court action. *Kinsey,* 228 F. Supp. 2d at 1316. Plaintiffs premised federal jurisdiction upon the diversity statute, 28 U.S.C. § 1332, and Judge Acker "assume[d], *arguendo,* that the amount in controversy *in the underlaying state action* does exceed $75,000." *Id.* (second emphasis added). In other words, Judge Acker assumed that the amount claimed by the state-court plaintiffs (*the defendants in the federal action assigned to him*) from the state-court defendants (*plaintiffs in the federal action*) in the underlying, state-court action was more than $75,000. That assumption, however, did not satisfy the $75,000 amount in controversy requirement of 28 U.S.C. § 1332(a)(1), *which is measured from the perspective of the federal-court plaintiffs* (defendants in the state-court action). *Ericsson, supra.* The federal plaintiffs failed to prove that the value of the relief sought in the federal action — an order compelling the federal defendants (*plaintiffs in the state-court action*) "to enter into a binding arbitration of the controversy that is the subject of a separate suit in the state court," *Kinsey,* 228 F. Supp. 2d at 1316 — exceeded the $75,000 jurisdictional threshold specified in § 1332(a). As in *Ericsson,* there was no way, beyond speculation, to reduce the value of the injunctive relief sought by the *Kinsey* plaintiffs to a monetary amount, and Judge Acker was compelled to dismiss the federal action. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.,* does not provide an independent basis for federal jurisdiction, but only *a remedy* when jurisdiction exists on some other basis. *See,*

*e.g., Baltin v. Alaron Trading Corp.,* 128 F.3d 1466, 1469-71 (11th Cir. 1997). Stated differently, before a plaintiff may file an action in federal court to compel arbitration of a dispute in accordance with the FAA, an independent basis for federal jurisdiction — such as federal question or diversity of citizenship — must exist. *See* 9 U.S.C. § 4 (a federal district court may consider a petition to compel arbitration of a dispute over which it "would have jurisdiction under Title 28").

Plaintiff also relies on Judge Acker's decision in *Fidelity Warranty Services, Inc. v. Kidd,* 45 F. Supp. 2d 1284 (N.D. Ala.), *aff'd,* 196 F.3d 1262 (11th Cir. 1999). Fidelity Warranty filed a petition in federal court to compel arbitration of a dispute with Kidd. *Id.* at 1285. The dispute was the subject of an ongoing, putative class-action pending in state court. *Id.* Kidd, the named plaintiff in the state-court suit, had specifically disavowed any claim for damages for himself or any member of the putative class in excess of $74,000, apparently in an attempt to avoid removal of the action. *Id.* The validity of the arbitration clause in the parties' contract was in question in the state court proceeding. *Id.* However, no arbitration demand had been filed by any party; rather, Kidd's state court complaint merely "anticipate[d] a reliance by one or more of the defendants upon" the arbitration clause. *Id*

Judge Acker was faced with a motion to dismiss, based on lack of subject matter jurisdiction. *Fidelity Warranty,* 45 F. Supp. 2d at 1285. Kidd alleged that jurisdiction could not be founded on 28 U.S.C. § 1332(a)(1), because the requisite amount in controversy had not been satisfied. *Id.* Relying exclusively on *Ericsson,* and on the "plaintiff-viewpoint" rule

set forth therein, Judge Acker held that Fidelity Warranty had not sufficiently demonstrated the existence of the requisite amount in controversy. *Id.* at 1287. The court noted that the value to Fidelity Warranty of its petition to compel arbitration would be "the right to have Kidd's claim against it decided by an arbitrator, as distinguished from its being decided by a court and/or jury." *Id.* at 1287. Further, Fidelity Warranty offered only conclusory allegations, unsupported by any evidence, that the value exceeded the jurisdictional amount, and there was "no [other] reasonable way to predict the outcome of [the] controversy in one forum as opposed to another." *Id.* It was "simply impossible to measure, or to quantify with any degree of certainty, the 'value to [Fidelity Warranty]' of the mere right to an arbitration proceeding." *Id.* Accordingly, the value of Fidelity Warranty's right to arbitrate its dispute was too "speculative and immeasurable" to satisfy the jurisdictional amount in controversy. *Id.* (citing *Ericcson,* 120 F.3d at 222).

The court finds that *Ericsson* and *Fidelity Warranty* are both distinguishable from the instant controversy. In *Ericsson,* the issue did not involve arbitration, and no dollar demand had been made in the complaint or in a settlement proposal. *See generally Ericsson,* 120 F.3d 216. Plaintiff asked only for an injunction, from which it might recover no benefit. *Id.* at 221-22. The *Ericsson* court specifically rested its decision on Ericsson's inability to reduce the value of the relief it sought to a monetary standard. *Id.* at 222.

In *Fidelity Warranty,* the court was faced with a motion to compel arbitration of the claims asserted by the plaintiffs (*federal defendants*) in an ongoing, state-court suit, but no arbitration demand had yet been made by any party. *See generally Fidelity Warranty,* 45 F.

Supp. 2d 1284. Judge Acker emphasized that there was "no reasonable way" to predict the outcome of the controversy in the arbitral forum, and that it was "impossible to measure, or to quantify" the value of the injunction to Fidelity Warranty. *Id.* at 1287.

Here, in contrast, plaintiff has moved to enjoin *an arbitration proceeding that is already in progress.* Defendant's arbitration demand provides a "reasonable way" to predict the outcome of the arbitration proceeding. *See Fidelity Warranty,* 45 F. Supp. 2d at 1287. In this regard, the court is persuaded by the Fifth Circuit's reasoning in *Webb v. Investacorp, Inc.,* 89 F.3d 252 (1996), which involved nearly identical facts.

In *Webb,* the parties had entered into a contract which contained an arbitration clause. *Id.* at 254-55. When a dispute arose regarding the terms of the contract, Investacorp filed a demand for arbitration of the claim. *Id.* at 255. The Webbs subsequently filed suit in state court, seeking both a declaratory judgment that their contract with Investacorp did not require arbitration of the dispute in question, and an injunction to prevent Investacorp from pursuing its claims in the arbitral forum. *Id.* Investacorp removed the case to federal district court based on diversity jurisdiction, and the Webbs moved to remand, asserting that the amount in controversy was not satisfied. *Id.* Investacorp also filed a motion to compel arbitration. *Id.*

The Fifth Circuit noted that the issue before it was "the value of the right *not* to submit a dispute to arbitration." *Webb,* 89 F.3d at 256. The court adopted the reasoning of the Second and Third Circuits, and held that, for purposes of determining the amount in controversy, the value of a petition to enjoin an arbitration proceeding is the amount of the

underlying arbitration claim. *Id.* at 256-57. The court noted that its ruling did not contravene the "plaintiff-viewpoint" rule, which also is followed by the Fifth Circuit, because "the difference to the Webbs between winning and losing the underlying arbitration" was a certain dollar amount in excess of the amount in controversy requirement. *Id.* at 257 n.1.[15]

The court finds the Fifth Circuit's reasoning in *Webb* persuasive, and consistent with Eleventh Circuit precedent applying the "plaintiff-viewpoint" rule. Based on *Webb*, the value of plaintiff's petition for injunctive relief can be quantified by looking to defendant's underlying arbitration demand. The "difference to [plaintiff] between winning and losing the underlying arbitration" is at least the amount of the underlying demand. *See Webb*, 89 F.3d at 257 n.1. If plaintiff loses in the arbitral forum, it will be required to pay $126,349.28; if plaintiff prevails, on the other hand, it will be free of the liability for $126,349.28. Either way, therefore, the "amount in controversy" exceeds the jurisdictional threshold.

The court is aware, of course, that even if defendant prevails in the arbitration proceeding, it might not recover the full amount it has demanded. The same is true when removal is based on a specific claim for damages in a plaintiff's complaint. A plaintiff might not recover the full amount of damages demanded in its state-court complaint, but the amount in controversy still would be "assessed *on the basis of plaintiff's complaint* as of the time of removal." *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1097 n.13 (11th Cir. 1994) (emphasis supplied) (citations omitted).

---

[15]The Northern District of Texas recently reaffirmed the proposition that the *Webb* decision did not relax or contravene the "plaintiff-viewpoint" rule. *See Adams v. Nationwide Mutual Insurance Co.*, No. Civ.A.3:02-CV-1607, 2003 WL 21251734, at *3 (N.D. Tex. March 28, 2003). The court noted, "[a]t most, [the *Webb* decision] represent[s] [an] exception[] applied to the specific facts of the case." *Id.* at *3.

Even if defendant's arbitration demand did not provide a clear way to define the amount in controversy, the court still would be convinced that the value of this dispute to plaintiff exceeds the jurisdictional amount. Before this action was commenced, plaintiff delivered at least two letters to defendant, asserting that defendant owes it sums of $87,629 and $229,264.92, respectively.[16] "There is no question that the court may consider [a] settlement offer in determining whether the case should be remanded." *Progressive Specialty Insurance Co. v. Nobles,* 928 F. Supp. 1096, 1098 (M.D. Ala. 1996) (citing *Burns,* 31 F.3d at 1097). This proposition also extends to demand letters delivered before a case is filed. *Golden v. Dodge-Markham Co.,* 1 F. Supp. 2d 1360, 1364 (M.D. Fla. 1998). Although the amounts demanded in these letters are not determinative, they are important considerations, especially when there is no contradictory information to suggest a different amount.

Plaintiff does not dispute that it made the demands recited above, and there is no other evidence in the record to suggest that plaintiff places a lower value on this dispute than it demanded in its letters. Stated differently, plaintiff's demand letters suggest that the value of the controversy forming the basis of this action exceeds $75,000.

Based on the foregoing, the jurisdictional amount in controversy, considered from plaintiff's perspective, is satisfied. Accordingly, plaintiff's motion to remand is due to be denied.

---

[16]*See* doc. no. 13 (defendant's response to plaintiff's motion to remand), at Exhibit E (demand letter stating that plaintiff is owed at least $87,629, and Exhibit F (demand letter, containing only a "partial list" of the amounts defendant owed plaintiff, stating that plaintiff is owed at least $229,264.92).

### III. MOTION TO COMPEL ARBITRATION, TO STAY DISCOVERY, AND TO DISSOLVE TEMPORARY RESTRAINING ORDER[17]

Defendant seeks an order compelling the parties to submit all disputes to binding arbitration, pursuant to the arbitration clause in the parties' contract.[18] The FAA establishes a federal policy favoring arbitration. *See, e.g., Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987). Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983).

The existence of a valid contract to arbitrate is determined by state law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995). Under Alabama law, there are two prerequisites for a valid arbitration contract: "(1) there must be a written agreement calling for arbitration[;] and (2) the contract in which the arbitration agreement appears must relate to a transaction involving interstate commerce." *Prudential Securities v. Micro-Fab, Inc.*, 689 So. 2d 829, 832 (Ala. 1997) (citation omitted).

Plaintiff does not contest that either of the above requirements has been satisfied. Indeed, a written agreement calling for arbitration clearly exists.[19] Further, the parties' contract clearly relates to a transaction involving interstate commerce. Plaintiff is a

---

[17]The court notes that the temporary restraining order entered by the Circuit Court of Madison County, Alabama, expired, by its terms, ten days after its entry on October 15, 2003. Accordingly, the aspect of defendant's motion seeking to dissolve the temporary restraining order is due to be denied as moot.

[18]Doc. no. 6.

[19]*See* General Conditions of the Contract for Construction, appended to and incorporated with Standard Form of Agreement Between Owner and Contractor, at § 4.5.1.

Delaware corporation with its principal place of business in Alabama; defendant is a Florida corporation with its principal place of business in Florida; and the automotive dealership the parties contracted to construct is located in Huntsville, Alabama.[20] A Michigan company provided financing for the construction project, and payments were wired into a Florida bank account.[21] A Florida architectural firm provided design services.[22] Supplies and materials were shipped from businesses in several states, including Massachusetts, Georgia, Ohio, and Pennsylvania.[23]

Finally, the arbitration clause applies to the claims at issue in this case. The clause broadly requires arbitration of "[a]ny controversy or Claim arising out of or related to the Contract, or the breach thereof."[24] In its arbitration demand, defendant claims that it is "owed a substantial unpaid balance for construction work performed for [plaintiff]," and that "[plaintiff] requested and received significant extra work from [defendant] and promised to pay for such work with no intention to ever pay [defendant]."[25] These claims clearly arise out of and relate to the parties' contract, or to the alleged breach thereof.

Ordinarily, these circumstances would be sufficient to require the court to submit this matter to arbitration of any and all disputes. Here, however, plaintiff asserts that its contract with defendant, including the arbitration clause, is void *ab initio*, because, at the time the

---

[20] *See* Rawe affidavit, at ¶¶ 1-3.
[21] *Id.* at ¶ 8.
[22] *Id.* at ¶ 9.
[23] *Id.* at 10-16.
[24] *See* General Conditions of the Contract for Construction, appended to and incorporated with Standard Form of Agreement Between Owner and Contractor, at § 4.5.1.
[25] Motion to compel arbitration, at Exhibit 2.

contract was executed, defendant was not a licensed general contractor in the State of Alabama, and had not obtained a certificate of authority to do business in Alabama as a foreign corporation.[26] The preliminary issue is whether plaintiff's claim that the contract is void should be resolved by the court, or by the arbitrator.

Plaintiff, relying on the Alabama Supreme Court's decision in *Alabama Catalog Sales v. Harris,* 794 So. 2d 312 (Ala. 2000), argues that the dispute cannot be resolved in arbitration. In the *Harris* case, the defendant moved to compel arbitration of the parties' underlying dispute, pursuant to an arbitration clause contained in the parties' contract. *Id.* at 313. The court held that the parties' contract as a whole was "illegal, and, therefore, void and unenforceable," because it violated the Alabama Small Loans Act. *Id.* at 316. The unenforceability of the contract also rendered the arbitration clause unenforceable. *Id.* The court held that no agreement to arbitrate ever existed, and the dispute could not be submitted

---

[26]Plaintiff bases its argument on Alabama's "door-closing statute," which provides that:

> (a) A foreign corporation transacting business in this state without a certificate of authority or without complying with Chapter 14A of Title 40[] *may not maintain a proceeding in this state* without a certificate of authority. All contracts or agreements made or entered into in this state by foreign corporations prior to obtaining a certificate of authority to transact business in this state shall be held void *at the action of the foreign corporation* or by any person claiming through or under the foreign corporation by virtue of the contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity.

Ala. Code § 10-2B-15.02(a) (1975) (Supp. 2002) (emphasis supplied); *see also* Ala. Const. art. XII, § 232 (1901).

The court notes that plaintiff failed to file a direct response to defendant's motion to compel arbitration, as ordered by the court. *See* doc. no. 7. However, plaintiff did raise substantial arguments in response to defendant's motion in its complaint, which was due on the same day as its response to the motion to compel arbitration. *See* complaint (doc. no. 12). Plaintiff also briefly addresses the issue in its reply to defendant's response to its motion to remand. Doc. no. 14. Thus, the court will consider those arguments as plaintiff's response to defendant's motion to compel arbitration.

to arbitration. *Id.* at 316-17. Thus, by implication, the Alabama Supreme Court held that the proper party to decide the issue of the contract's illegality was the court, not the arbitrator. *Id. See also Brown v. The Pool Depot, Inc.,* 853 So. 2d 181, 187 (Ala. 2002) (the Alabama "door-closing" statute applied to "void the [parties'] contract and its arbitration provision").

Plaintiff's argument does not have merit here, however, because under federal law, the arbitrator, and not the court, initially must decide the enforceability of a contract, when that contract contains an arbitration clause. The United States Supreme Court first addressed this issue in *Prima Paint Corporation v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967), which held that,

> if the claim is [unenforceability] of the arbitration clause itself — an issue which goes to the "making" of the agreement to arbitrate — the federal court may proceed to adjudicate it. But the statutory language [of FAA § 4[27]] does not permit the federal court to consider claims of [invalidity] of the contract generally . . . . We hold, therefore, that . . . a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.

*Id.* at 403-04, 87 S. Ct. at 1806. The distinction to be made is "between challenges to the contract as a whole and challenges directed exclusively toward the arbitration clause." *Wheat, First Securities, Inc. v. Green,* 993 F.2d 814, 818 (11th Cir. 1993); *see also Bess v. Check Express,* 294 F.3d 1298, 1305-06 (11th Cir. 2002).

The Eleventh Circuit recently made it clear that this distinction holds true, even in

---

[27]Section 4 of the FAA provides in pertinent part:

The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement . . . . *If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.*

light of the Alabama Supreme Court's decision in *Alabama Catalog Sales v. Harris, supra.* In *Bess v. Check Express*, 294 F.3d 1298 (11th Cir. 1993), the defendant moved to compel arbitration pursuant to the arbitration clause in the parties' contract. *Id.* at 1301. The plaintiff argued the transactions contemplated by the contract were void *ab initio*, because they violated the Alabama Small Loan Act. *Id.* at 1304. The plaintiff also argued that the court, rather than the arbitrator, should decide the legality of the transactions. *Id.* Because the plaintiff had challenged only the legality of the underlying transactions *in general*, and not the formation of the arbitration clause *specifically*, the court based its analysis on its prior decision in *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851 (11thCir. 1992). *Bess*, 294 F.3d at 1305. There, it had noted that "'an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration.'" *Bess*, 294 F.3d at 1305 (citing *Chastain*, 957 F.2d at 854).

> [T]he focus of the court's decision in *Chastain* . . . was on the question of assent, i.e., whether the parties mutually had agreed to the contracts. <u>By contrast, [plaintiff] urges that the transactions in this case are void, not because he failed to assent to the essential terms of the contracts, but because those terms allegedly render the contracts illegal under Alabama law</u>. At bottom, [plaintiff] challenges the *content* of the contracts, not their *existence*. Indeed, unlike the contracts in *Chastain*, both the arbitration agreement and the deferred payment contracts were signed by [plaintiff], and there is no question about [plaintiff's] assent to those contracts. Thus, this case falls within the 'normal circumstances' described in *Chastain*, where the parties have signed a presumptively valid agreement to arbitrate any disputes, including those about the validity of the underlying transaction. Therefore, the issue raised by [plaintiff] — whether the deferred payment transactions are void as illegal — is one for the arbitrator, not the court.

*Bess,* 294 F.3d at 1305-06 (italicized emphasis in original; underlined emphasis added).[28]

In so deciding, the Eleventh Circuit emphasized that it was not bound by the proposition in *Alabama Catalog Sales v. Harris* that the court, not the arbitrator, must decide whether the contract provisions were enforceable. The court stated, "[i]n reaching our decision, . . . we are not deciding questions of Alabama contract law; rather, we are deciding the scope of the district court's authority under 9 U.S.C. § 4, a question of federal law." *Bess,* 294 F.3d at 1306 n.1.

In the present case, this court's authority does not extend to deciding whether defendant's failure to obtain an Alabama general contractor's license, and its failure to obtain a certificate of authority to do business in Alabama, render its contract with plaintiff unenforceable. Here, as in *Bess,* there is no question as to whether either party signed the contract, or whether the parties mutually assented to the contract's material terms, including the arbitration clause. *See Bess,* 194 F.3d at 1305-06. Instead, plaintiff only argues that the contract, as a whole, is void because it violates Alabama law.[29] Thus, this case also falls under the "normal circumstances" described in *Chastain* and *Bess: i.e.,* "the parties have signed a presumptively valid agreement to arbitrate any disputes, including those about the

---

[28]Indeed, federal courts will consider the validity of contracts containing agreements to arbitrate only when there is a dispute over whether a contract ever existed at all. *See, e.g., Wheat, First Securities, Inc.,* 993 F.2d at 818-19 (court was required to decide the issue of arbitrability because the parties never entered into an agreement to arbitrate); *Chastain,* 957 F.2d at 854-56 (court was required to decide the validity of a contract containing an arbitration clause because the parties disputed whether the contract had ever been signed).

[29]For example, in its complaint, plaintiff asks the court to declare that "the contract between Plaintiff and Defendant . . . is unenforceable and invalid." Doc. no. 12 (complaint) at ¶ 29(a). Plaintiff addresses the contract as a whole, not the arbitration clause specifically.

validity of the underlying transaction." *Bess*, 294 F.3d at 1305-06 (citing *Chastain*, 957 F.2d at 854). The parties' dispute regarding the legality of their underlying contract is properly determined by the arbitrator, not by this court. *See id.*

## IV. CONCLUSION

Plaintiff's motion to remand should be denied. That aspect of defendant's motion seeking to dissolve the temporary restraining order entered in state court should be denied as moot. That aspect of defendant's motion seeking to compel arbitration should be granted. Defendant's renewed motion to compel arbitration and to stay discovery should be denied as moot. An appropriate order will be entered contemporaneously herewith.

DONE this 30th day of January, 2004.

_____
United States District Judge